Without oral argument, just on the briefs, those are Appeal 2008-50-02 McNeil v. United States Appeal 2008-30-66 Schalich v. Merit System Protection Board and Appeal 2008-31-41 MacLeod v. Veterans Administration We'll hear argument first in Appeal 2007-13-80 Aspex Eyewear v. Altair Eyewear Mr. Nicodemus, good morning to you. Good morning. Welcome to the court. Please proceed. May it please the court. The district court made a mistake in construing the term frame in the 054 patent. The mistake was that the district court required the frame to have lens rims. And the district court came to that conclusion based on other language in the claim. The claim language to the effect that the frame supports the lenses therein. So, from our perspective, what the district court did was take the most narrow interpretation of the word therein and impose a limitation of lens rims on the claims based on that narrow interpretation. But the claim does use both frame and therein together in the same phrase. That's correct. The entire phrase, Your Honor, is primary frame for supporting primary lenses therein and auxiliary frame for supporting auxiliary lenses therein. So really it's, you know, the word frame can't be interpreted in the abstract. It needs to be interpreted or considered in the context that it is set forth in the claims, correct? I agree with you. But even in that context, Your Honor, the word therein or the intrinsic record does not justify a finding that the term frame or the entire phrase should be limited to frames that have lens rims. Even if we look at the ordinary meaning of the word therein, which the parties do not dispute, it means in or into a particular time, place, or thing. What if the eyeglasses had partial rims, or rims just on the top and not on the other three sides of the typical squarish shaped lens? Would we say that the lens is being held therein or within such a partial rim? Yes, they would. Because if you look at a frame, and if you look at what the patent discloses, the frame is more than just the partial structures that touch or surround to a degree the lens rims. The nose bridges, the middle bridges are part of the frame. Something called the extensions or the end pieces, and I'm pointing to them on my own glasses, they're the parts that come off the sides of the lens rims and connect to the pieces that go over the ears. All of those features are part of the frame. And in a rimless piece of eyewear, you'll have a nose bridge that's connected to the lenses by pins or screws or something else, and you will have these end pieces in the primary eyeglass frame which are also connected to the lenses by screws or something similar. In those cases of rimless frames, the lenses are supported therein because those structures hold the lenses securely in place, and the lenses are located within the boundaries of those structures. The word therein does not necessarily require a structure that completely surrounds or partially surrounds another structure. What about the other basis the district judge gave for the construction requiring rims, that the claim language included the phrase, including a nose bridge. And as I recall, the district judge said that that meant that it had to include not only the nose bridge but other elements of a frame. What's your response on that? Your Honor, the word including is just like the transitional term comprising. It's open-ended. It means that the frame can include other structures, but doesn't mean that the frame has to include additional particular structures. But is it your view that the district judge seemed to believe that it did have to include additional structures beyond the nose bridge? I believe the district court concluded that the word include meant that it had to necessarily include rims, and I think that's wrong. It's been out of fashion for years, but do you know what a pinsnay is? I'm sorry, Your Honor? A pinsnay. I would have to... See pictures of them in the old days. They had no extensions at all. They just had a middle bridge and a little spring, and you put them on your eyes. They stopped wearing them about 1920. So all you have is the middle bridge. Is that a frame? Yes. Okay. The middle bridge is a frame. It's known in the eyewear industry as a frame. In the patent, the 054 patent, the middle bridge is described as being part of the frame for both the primary and the auxiliary frame. Counsel, was there an oral argument on claim construction at some point? I think there was. I think there was full markman briefing, and I believe there was oral argument. I may be mistaken, Your Honor, because I was not the trial counsel. Nor an associate from your firm? No. The trial counsel was a different intellectual property firm. It was not Greenberg Charter. Have you made yourself familiar enough with the record before the district judge to know whether the points you're arguing to us now were presented to the district judge before he made his claim construction? The points I'm arguing now are that the claims cover rimmed and rimless frames. Those points were made to the district court. In my briefing, I showed as examples of rimless frames Altair's products. Altair has argued that I have waived that argument because I have not presented that argument, or my colleagues did not present it to the district court. My colleagues did not specifically make that argument, but we are relying on our same claim construction before the district court. We're not changing our claim construction. We are citing Altair's products, the rimless products, as additional supporting reasons, which, as I read the Interact gift case, we can do that. We are not changing our claim construction. All right. Now, what about the issue of standing? The issue of standing was an issue raised by Altair, but I'm certainly prepared to address that. As I understand Altair's position, they say that an exclusive license must be in writing to confer coplaint of standing. I disagree, and I think that the opinions of this court support our position. Then what meaning remains for the phrase in the statute, in like manner? I believe that is just like the situation in the Enzo case. The Enzo case said an exclusive license does not have to be in writing, but if you are going to be suing in your own name without the patent owner, what you are is putting yourself in the position of a virtual assignee or a virtual patentee. I'm not worried about any of that. I'm just worried about a phrase in the statute. That's what I'm asking about. When the statute says in like manner, it seems to be referring to the prior sentence that said in writing. So then the second sentence would have to be read, I would think, as if it said in writing. And if that's the correct interpretation of the second sentence in the statute, then how can you be an exclusive licensee because it seems to be undisputed that if it exists, it's oral only and not in writing. I don't believe that that sentence in the statute refers to exclusive licensees. I believe that sentence in the statute, based on the case law of this court, refers to virtual patentees which have rights greater than exclusive licensees. The Waymark case of this court interpreted section 261 and said only assignments need to be in writing. And in the Waymark case, we had a situation where we had the patentee. Well, help me understand the second sentence. I mean, you say it doesn't apply to all exclusive licensees. It only applies to those exclusive licensees who qualify as virtual SMEs. But that isn't what the language of the statute says. It says exclusive licenses. Unqualified. I understand what the language says, Your Honor. But I can only interpret it in terms of the decisions of this court that are precedential. And those decisions, the ones we cited in our brief, indicate to have co-plaintiff standing to sue as an exclusive licensee. That license does not have to be in writing. And those cases from Waymark to Enzo cite section 261 of the patent statute. Do you think they're correct? Waymark and Enzo, yes, I do. I think those cases are correct. Well, how can they be correct in view of the language of the second sentence of the section? Because I believe that second sentence of the section is talking about virtual patentees or virtual SMEs and not talking about exclusive licensees. How can you say that when Congress used the word exclusive license, not virtual SME or any equivalent? Because statutes are always interpreted by the case law coming down over time. Yeah, but I'm asking if the case law is correct. And you're saying, yes, it is. Well, why do you think it's correct in view of the language? And you said you'd be saying, well, that's because that's what the court held. Well, I understand that's what the court held. But that doesn't necessarily mean it squares with the statutory language. It may not necessarily square with the words. But the court has had opportunities to construe 261 over time in connection with exclusive licenses and co-plaintiff standing. And that's the decisions that they have reached. All right. Do you want to save the rest of your rebuttal time? I do, Your Honor. Thank you. Thank you kindly. Mr. Bodine. May it please the Court. Appellants today ask the Court to ignore express terms of both the claims of the patents in suit as well as section 261 of the Patent Act. In particular, they ask you to ignore therein a middle bridge portion in claim 1 of the 054 patent. They ask you to ignore the purely functional retaining mechanism language in the claims of the 811 and 896 patent. And they ask you to ignore, by an instrument in writing and in like manner of section 261. And all of these phrases have legal significance that can't be ignored. Are you going to take them one by one? Yeah. Turning first to claim 1 of the 054 patent. It requires that lenses be supported. That you have frames supporting lenses therein and including a middle bridge portion. To say that a frame has lenses therein means it has to be inside. Well, that's your position. But what's the support for that position? I mean, you're saying therein means it has to be surrounding the lens. It's not self-evident that that's the case. The definition of therein is in or into that place, time, or thing. So it has to be in the frame. Well, there are other definitions of therein as well. Why should we agree with the one you happen to select because it's convenient to your case? It's there. It supports your argument. But it's not irrefutable. There are other definitions. Usually the meaning of a word like that depends on the context, not just what Webster says. And that context is important, and I would agree with you there. And if you look at the patent and you look at the claims of the patent and the specification of the patent, the language of the claims exactly tracks the language of the detailed description and the summary of the invention. The only thing that's missing from the claims are the reference numbers, reference numbers 10 and 20. And reference number 10— Well, you're not suggesting, are you, that this patent is limited to the preferred embodiment as shown in the figures? I'm suggesting that it's limited to the words of the claim. Well, of course. That's axiomatic. And the specification provides further information about how to interpret that. That's also axiomatic, but you're not answering my question. You seem to be saying this claim should be interpreted to only cover the preferred embodiment and nothing more. No, and maybe I'm not clearly articulating this, and I apologize for that. What I'm trying to say is that this claim requires that lenses be supported in the frame. And as the district court found, the only way you can support lenses in the frame is by using rims that are disclosed in the specification. You seem to be suggesting, then, that the rim has to completely encircle the lens. Is that really what you're saying? The rim could either completely or partially go around, but if you look at Mr. Leck's— How about if it's only on the top? If it's only on the top, you're going to have rimlon around the bottom, and that's supported in the record by Mr. Leck's declaration at A1254.  Rimlon or rimwires. If you look at a pair of glasses— Well, let's say, hypothetically, you have a pair of glasses with just a supporting structure on the top of the lens and no supporting structure whatsoever on the bottom. Say it's attached by a screw or an adhesive. Is that covered by this claim? First of all, there's no evidence in the record to suggest that you can do it that way without rimlon. The only evidence— It's my hypothetical. Right. But I'm saying that's a different factual scenario from the factual scenario here. I'm still with you, but it's still my hypothetical. You better answer the question as asked. I don't think that it supports lenses therein, and I'll give you an analogy, and that is that if I look at— Their definition is within the boundaries of. The lenses are held within the boundaries of, and that would be inside the limits. Well, how about if the rim covers the top and both sides right down to the corner where the bottom edge begins, but it does not support the bottom edge. Is that in? Is that therein? I think it is. I think it is. But to accept their argument that the frame—and if you'd like, I would pass up a piece. This is the accused device. The sunglass lenses are—this is attached to the sunglass lenses on all the accused devices. And for them to prevail, they have to say that this is a frame made up of pieces and parts. Well, you can see there's no pieces and parts. Are you basically conceding implicitly that to win, we have to agree with your definition and the trial judges of the single word therein, and that you cannot prevail on the second ground the trial judge used where he said that the word including meant it had to include some things in addition to the no speech? And I think there's some confusion there because I don't think the judge said including meant that there had to be additional elements. I think that he said middle bridge portion meant that a frame couldn't just be a middle bridge because a middle bridge— What was the exact language? What's that? What was the exact language? That's the exact language of the claim. I'm talking about the language of the construction by the trial judge keyed to the word including a nose bridge. The trial judge said that a frame includes at least a bridge and rims based on his reading of the patent specification, the words of the claim, and the drawings. But didn't have to include anything else? I thought he plainly said it had to include other things as well as the nose piece. I think the middle bridge portion is the exact claim language used. The claim says that it includes a middle bridge portion. Our argument is— Yeah, yeah, yeah, but that's not the point. Whether we call it a nose piece or a middle bridge isn't the point. The point is whether he assumed that it had to include other elements of a frame besides what I'm calling maybe inartfully the nose piece. Well, I think that the plaintiffs here actually admit that it has to include elements in addition to the middle bridge. Just answer my question instead of telling me what he's arguing. I'm asking you a specific question about what the trial judge said and what the trial judge apparently assumed was the rule of patent law, and you're telling me he didn't say that. So I'm saying, well, what's the exact language he used? The exact language that he uses, and this is at A25. Therefore, the court finds that a frame is an eyeglass device that includes at least a bridge and rims. And he didn't say it had to include anything else? He didn't say it had to include anything else. That's the entire sentence. Turning now to the retaining mechanisms, retaining mechanisms is the district court properly found that it's a— This wasn't argued, as I recall, by Mr. Nicodemus. Okay. I don't think it's an appropriate argument. We both rest on your briefs as to— Okay, I'll rest on my briefs then. —the means plus function limitations. Okay, then I'll rest on my brief there and go on to the standing argument. Well, actually, I'll talk about the infringement argument for a minute, and that is there's no evidence in the record that shows equivalence between rims, on the one hand, and pins. And the appellants have conceded that if the district court's claim construction is right, then the only question remaining would be equivalence between rims and pins. Probably not a very hard question to answer. Okay, I'll go on to the standing argument. Before you move on to standing, just one last point on the word frame. If I'm correct, there is some evidence in the record, is there not, that at least within the industry, maybe an informal understanding of the word frame, is that it covers both eyeglasses with a surrounding frame and rimless glasses as well? I don't believe that there is any evidence in the record that suggests that. In fact, Mr. Leck's testimony says otherwise. He says that he believes that a frame requires both a bridge and rims, at least— No evidence in the record showing some use in the industry of the term frame to refer to— Oh, use in the industry such as advertising materials that were created after the patent? That's the kind of use I'm talking about. There is evidence that there were some materials not intended for use by one of skill in the art. These are marketing materials. They're not materials directed to one of skill in the art. And all the materials that they're talking about— Well, they're advertising materials used in the eyeglass industry, at least in the retail part of that industry. In the retail part of the industry, that's correct. That refer to rimless eyeglasses as having frames. They refer to generally rimless eyewear as having frame collections, I think, is what the evidence in the record suggests. I mean, you'll agree with me that there's use both ways. Sometimes it's rimless eyeglasses. Sometimes it's rimless frames. I will agree, but I then would say that you have to consider it in the context of who it was intended for. Okay, I'd like to move to the standing argument. The standing argument, I think, comes down to the language of Section 261. There's no written agreement here. Section 261 says— Aren't we bound by our case law regardless of what the exact language in 261 is? I don't think that the case law has ever decided—has ever looked at the interplay between the language in the first sentence of Section 261 and the second sentence. Is it not true that our cases have interpreted the second sentence as limited effectively to virtual assinees as opposed to all other types of exclusive licensees? I don't think that it has. I think that those statements in the cases were not necessary to the decision and therefore were addictive. For example, in Enzo, the court reversed the district court's ruling that the oral exclusive licensee—and I put that in quotes—had standing. In Waymark, there were three bases for the decision to award sanctions, and on appeal— in fact, what the court says, on appeal, Porta Systems does not even seek to support the award of sanctions on this ground. How about Wright Height? In Wright Height, there was no standing to assert the patent even under the written exclusive sales agreements. And I think that's a very important point here because if you look at the evidence here, and the evidence being the declarations of the two Iffergens, they show nothing more than they had an exclusive right to sell in the United States. What about this statement from Wright Height? To be an exclusive licensee for standing purposes, a party must have received the patentees' express or implied promise, etc., etc. I don't believe that that was important to the—I don't think that was— You think that's dicta. I think it was dicta because in that case, the court examined a written agreement. Your standing issue was presented as a cross-appeal. Yes. And I'm not sure it's properly a cross-appeal. It may be an alternative ground for a ruling in your favor. But notwithstanding that, my question is, if we affirm on the non-infringement side of this case, do we need to address the standing question at all? Yes, you do. And partly because aspects we would not have standing to bring the lawsuit here to this court wouldn't properly be before the court. But if there's no infringement, then— Secondly, there's a question then of whether there would be a request for attorney's fees under Section 285 based on the lack of a license agreement. I see that I'm cutting into my rebuttal time. All right. Thank you. Thank you. Mr. Nicodema, before any more of your time is used, I'd ask Mr. Bedin about what the district judge actually said. And he read me the first sentence of a paragraph and emphasized that that's all that sentence said. But the next sentence says, in addition, the claim language requires that the frame, quote, include, end quote, a middle bridge portion, comma, which indicates that the frame must also have other components, comma, i.e. rims, period, end quote. So it looks to me like the district judge, much as you suggested in your initial argument, had an upside-down understanding of what the phrase include means and doesn't mean in the context of patent claims. So I guess your argument is, unless we're persuaded by Mr. Bedin's interpretation of therein, that you're entitled to reversal because it's clear that the second ground relied on by the district judge, keying off the word include, had the law backwards. That's correct. The judge had the law backwards, Your Honor. And that is, for the record, at page 24 of the appendix. And I had highlighted those very words when Altair's argument was being made. OK. Now the rest is on your time for your rebuttal. I really don't have much in the way of. You don't have to use it all, but it's available. I would just like to make one point about the Waymark case. I don't believe that decision was dicta. In Waymark, this court reversed a sanctions order issued by the district court. The sanctions order was issued on the grounds that there was no written agreement that gave the licensee standing. The Waymark court said, you don't need one to be an exclusive licensee. What Altair is relying on is the part of that paragraph in Waymark where the court said the infringer is not arguing this on appeal. But nevertheless, this court entered a ruling which reversed the district court's award of the sanctions order. And the basis for it was that exclusive licensees do not need to be in writing to confer standing. Under those circumstances, Your Honor, I believe that Waymark is not dicta. And that's really all I had left. All right. Thank you very much. Thank you, Your Honor. You have some rebuttal time just on the cross appeal. Your Honor, I think I've said everything that I need to say. All right. We thank both counsel. We'll take the appeal under advisement.